United States District Court
Southern District of Texas
**ENTERED**
April 30, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| STEVEN J. WILSON, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:18-cv-00399 |
| | § | |
| CITY OF MISSION, TEXAS and | § | |
| TEODORO RODRIGUEZ, JR., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers "Plaintiff's Opposed Motion for Leave to File Second Amended Complaint"[1] and Defendants' response.[2] After considering the motion, record, and relevant authorities, the Court **GRANTS** Plaintiff's motion to amend except to the extent described herein.

### I. BACKGROUND AND PROCEDURAL HISTORY

This case is a civil rights lawsuit seeking recovery for allegedly excessive force used by Mission Police Department officers when they shot an unarmed man in his bedroom on January 9, 2017.[3] The operative complaint, Plaintiff's First Amended Complaint, brings claims against Mission, Texas police officer Teodoro Rodriguez, Jr. under 42 U.S.C. § 1983 and against the City of Mission under the Texas Tort Claims Act.[4]

Plaintiff Steven Wilson is disabled by schizoaffective disorder.[5] On January 9, 2017, Plaintiff "suffered a mental health episode" and the Mission Police Department received calls

---

[1] Dkt. No. 29.
[2] Dkt. No. 30.
[3] *See* Dkt. No. 21.
[4] Dkt. No. 22 at 1, ¶ 1. (The facts set out herein are as alleged by Plaintiff)
[5] *Id.* ¶ 2.

that Plaintiff "was running naked through the neighborhood."[6] Police officers arrived at Plaintiff's home and found Plaintiff in his locked bedroom lying in his bed.[7] Defendant police officer Rodriguez fired his shotgun at Plaintiff through a window that looked into Plaintiff's bedroom.[8] The shotgun blast severely injured Plaintiff, but Plaintiff survived with permanent injuries after being taken to the hospital.[9] The use of live shotgun ammunition was allegedly a mistake, as Defendant Rodriguez meant to use a nonlethal "beanbag round."[10]

Plaintiff's instant motion now informs the Court that Plaintiff's belief that Defendant Officer Rodriguez shot Plaintiff was error.[11] Plaintiff brought his original complaint in December 2018[12] and filed his amended complaint in April 2019.[13] Plaintiff represents that "[d]iscovery in this case did not begin until June 2019."[14] Plaintiff learned no later than September 30, 2019, that Officer Jaime Solis was actually the shooter,[15] and Plaintiff moved to amend in December 2019.[16] It turns out that Officer Rodriguez was allegedly the "supervisor in charge of the scene and negligently loaded the wrong type of ammunition in the weapon Officer Solis used."[17] Plaintiff seeks leave to amend to account for new facts, assert supervisor liability against Officer Rodriguez, and amend the Texas Tort Claims Act "claim against the City of Mission to account for Officer Rodriguez's and Officer Solis's respective conduct."[18] Plaintiff relies on the

---

[6] *Id.* at 2, ¶ 9.
[7] *Id.* at 2–3, ¶ 11.
[8] *Id.* at 3, ¶ 13.
[9] *Id.* ¶¶ 14–16.
[10] *Id.* at 5, ¶¶ 21–22.
[11] Dkt. No. 29 at 1, ¶ 2.
[12] Dkt. No. 1.
[13] Dkt. No. 22.
[14] Dkt. No. 29 at 1, ¶ 3.
[15] *See* Dkt. No. 29-2.
[16] Dkt. No. 29.
[17] *Id.* at 2, ¶ 3.
[18] *Id.* at 2, ¶ 4.

"relation-back doctrine under Rule 15(c)" to account for adding claims and a defendant beyond the statute of limitations.[19]

Defendants oppose Plaintiff's motion for leave to amend. Defendants' central argument is that "[e]ven through his proposed second amended complaint, however, Plaintiff fails to state a claim upon which relief can be granted against the Defendants. Plaintiff has proposed to amend his complaint in an effort to survive otherwise certain dismissal, but such amendments are cosmetic and futile."[20] Defendants also argue that Plaintiff's supervisory claim against Defendant Rodriguez[21] and claims under the Texas Tort Claims Act cannot be brought.[22] The motion is ripe for decision.

## II. Discussion

### a.  Legal Standards

After the deadline for amending a pleading once as a matter of course,[23] "a party may amend its pleading only with the opposing party's written consent or the court's leave."[24] Plaintiffs' First Amended Complaint was filed on April 30, 2019,[25] so the motion for leave to amend in December 2019 is after the 21-day deadline[26] and therefore requires the Court's leave. "Leave to amend is in no way automatic, but the district court must possess a substantial reason to deny a party's request for leave to amend."[27] In determining whether to allow leave to amend a pleading, courts examine whether there is (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the

---

[19] *Id.* ¶ 5.
[20] Dkt. No. 30 at 2, ¶ 1.
[21] *Id.* at 3, ¶ 5.
[22] *Id.* at 9, ¶ 13.
[23] *See* Fed. R. Civ. P. 15(a)(1).
[24] Fed. R. Civ. P. 15(a)(2).
[25] Dkt. No. 22.
[26] Dkt. No. 29.
[27] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quotation omitted).

opposing party; and (5) futility of the amendment.[28] As to the fifth factor, the Fifth Circuit has held that that courts "need not indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."[29] Absent such factors, the Court should freely grant the requested leave.[30] Nonetheless, the decision whether to grant leave to amend lies within the Court's sound discretion.[31] "At some point a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established," this Court will dismiss the suit.[32]

To determine whether a proposed amended complaint is futile, the Court applies the Federal Rule of Civil Procedure 12(b)(6) standard.[33] Under Rule 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34] The Court accepts all well-pleaded facts as true (even if doubtful or suspect[35]) and views those facts in the light most favorable to the plaintiff, but will not strain to find inferences favorable to the plaintiff.[36] A plaintiff need not plead detailed factual allegations, but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[37] Courts first disregard any conclusory

---

[28] *SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 944 (5th Cir.) (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)), *cert. denied*, 139 S. Ct. 274 (2018).

[29] *United States ex rel. Jackson v. Univ. of N. Tex.*, 673 F. App'x 384, 388 (5th Cir. 2016) (quoting *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (per curiam)).

[30] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[31] *Smith*, 393 F.3d at 595 (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

[32] *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).

[33] *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[35] *Twombly*, 550 U.S. at 555–56.

[36] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[37] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).

allegations as not entitled to the assumption of truth,[38] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[41] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible."[42] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[43] The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[44] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[45]

### b.  Analysis of Relation-Back of Proposed Amendment

The Court first turns to whether Plaintiff's proposed new claims against police officer Jaime Solis are time-barred by the statute of limitations or are permitted by the relation-back doctrine, because there is no need to examine Plaintiff's allegations against Officer Solis if they

---

[38] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

[39] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

[40] *Iqbal*, 556 U.S. at 678.

[41] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

[42] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

[43] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

[44] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[45] Fed. R. Civ. P. 12(d).

cannot be asserted at all. Plaintiff acknowledges that he "seeks to add claims and a defendant

beyond the applicable 2-year statute of limitations"[46] so Plaintiff therefore "relies on the relation-

back doctrine under Rule 15(c)."[47] Plaintiff argues that he has made an error of misidentification,

but the relation-back doctrine permits amendment where the parties are closely related or where

notice may be imputed through shared counsel.[48] Plaintiff also argues that the allegations arise

out of the same occurrence, Officer Solis will not be prejudiced by the amendment, the nature of

claims will not change and the Court will not need to modify the case management schedule, and

Officer Solis knew he may be sued because of the shooting.[49] Defendants respond that the

proposed amendment is not a mistake or misidentification, that shared counsel does not cure the

issue, and that effectively substituting Officer Solis for Officer Rodriguez is impermissible.[50]

The relation-back doctrine permits an amended complaint to substitute in place of the

original complaint, and thus cure any potential statute of limitations issues, when the doctrine as

embodied in Federal Rule of Civil Procedure 15(c) and elaborated upon by the courts is

satisfied.[51] Rule 15(c)(1) provides in full:

> An amendment to a pleading relates back to the date of the original pleading
> when:
>> (A) the law that provides the applicable statute of limitations allows relation
>> back;
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct,
>> transaction, or occurrence set out--or attempted to be set out--in the original
>> pleading; or
>>
>> (C) the amendment changes the party or the naming of the party against whom
>> a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period
>> provided by Rule 4(m) for serving the summons and complaint, the party to be
>> brought in by amendment:

---

[46] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West 2020).
[47] Dkt. No. 29 at 2, ¶ 5.
[48] *Id.* at 3, ¶ 7.
[49] *Id.* at 7–8, ¶¶ 18–20.
[50] Dkt. No. 30 at 6–9, ¶¶ 8–12.
[51] *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 946 (S.D. Tex. 2013) (Harmon, J.) (citing
*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010)).

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The Fifth Circuit has already held in the context of a 42 U.S.C. § 1983 action that Rule 15(c)(1)(A) is inapplicable.[52] Therefore, "the addition of a new defendant does not relate back to the original complaint unless what is now Rule 15(c)(1)(C) applies."[53] Under that subsection, "Plaintiffs have the burden to demonstrate that an amended complaint relates back under Rule 15(c)."[54] Thus, Plaintiff must satisfy the three elements of the rule: (1) same transaction, (2) notice, and (3) mistake.[55] In other words, under Rule 15(c), the party Plaintiff seeks to bring in by amendment, Officer Solis, must have been involved in the same occurrence as Officer Rodriguez and must have received notice within 90 days[56] of the action and knew or should have known that the case would have been brought against Officer Solis but for Plaintiff's mistake concerning the identity of the officer that shot Plaintiff.[57] The relation-back "rule 'is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification.'"[58] The inquiry thus turns on "what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint."[59]

---

[52] *See Balle v. Nueces Cty.*, 952 F.3d 552, 557 (5th Cir. 2017).
[53] *Ultraflo Corp.*, 926 F. Supp. 2d at 946 (citing *Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 806 (5th Cir. 2006)).
[54] *Al-Dahir v. FBI*, 454 F. App'x 238, 242 (5th Cir. 2011).
[55] *See Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998).
[56] *See* FED. R. CIV. P. 4(m).
[57] *Al-Dahir*, 454 F. App'x at 242.
[58] *Balle v. Nueces Cty.*, 952 F.3d 552, 557 (5th Cir. 2017) (quoting *Jacobsen*, 133 F.3d at 320).
[59] *Id.* (quoting *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 554 (2010)).

Defendants do not dispute that the proposed amendment satisfies the first element, Rule 15(c)(1)(B).[60] Plaintiff's proposed amendment arises from the same occurrence and merely seeks to substitute Officer Solis for Officer Rodriguez in the same set of allegations.[61]

Defendants also do not appear to dispute the second element, notice, under Rule 15(c)(1)(C)(i).[62] The notice element in this context may be satisfied by actual awareness of the issues in the complaint,[63] or by an "identity of interest between the original defendant and the defendant sought to be added or substituted," which means "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other. In this regard, notice may be imputed to the new party through shared counsel."[64] Officer Solis testified that he was aware of the shooting issue and knew that he may be sued within approximately 60 days after the incident.[65] Defendants do not object to this testimony.[66] Further, Plaintiff argues that "Officer Solis will not be prejudiced because the same counsel that have been representing the City of Mission and Officer Rodriguez will be representing him,"[67] and Defendants do not object.[68] Indeed, the same attorneys represented Defendant City of Mission and Defendant Rodriguez, in addition to a police officer now dismissed from this proceeding and "Unknown Mission Police Officers," at an earlier stage of this case.[69] Furthermore, all police officers were served at the same address,[70] which supports

---

[60] *See* Dkt. No. 30 at 5–7, ¶¶ 7–10.
[61] *See* Dkt. No. 29 at 2, ¶¶ 3–4.
[62] *See* Dkt. No. 30 at 7–9, ¶¶ 10–12.
[63] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 378 (5th Cir. 2010).
[64] *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (internal quotation marks and citations omitted).
[65] Dkt. No. 29-2 at 40, 159:7–160:8.
[66] *See* Dkt. No. 30 at 6–7, ¶ 9. Defendants argue that, even if shared counsel is present, the "mistake" element remains. *Id.* Although Federal Rule of Civil Procedure 12(d) requires the Court to convert a motion to dismiss into a motion for summary judgment if the Court considers matters outside the pleadings, Rule 15 has no such requirement.
[67] Dkt. No. 29 at 7, ¶ 19.
[68] *See* Dkt. No. 30 at 6–7, ¶¶ 7–10.
[69] *See* Dkt. No. 7 at 21–22.
[70] Dkt. No. 4.

the inference of adequate notice to Officer Solis.[71] Lastly, Officers Rodriguez and Solis share an identity of interest as police officers with the same city police department, which further supports an inference of adequate notice.[72] There is no obvious reason that Officer Solis has not received adequate notice or will be prejudiced by joinder, and Defendants point to none. Officer Solis will be entitled to raise all appropriate defenses.

Defendants dispute that Plaintiffs can satisfy the third element, mistake, under Rule 15(c)(1)(C)(ii).[73] Defendants argue that "failing to identify individual defendants cannot be characterized as a mistake."[74] The Fifth Circuit held in *Jacobsen v. Osborne* that "[a] failure to name the correct defendant due to a lack of knowledge of the proper party is not a mistake and will not allow a plaintiff to avail itself of the relation back doctrine."[75] However, the Supreme Court has abrogated this holding.[76] The relevant passage is as follows:

> By focusing on [Plaintiff] Krupski's knowledge, the Court of Appeals chose the wrong starting point. The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of [Defendant] Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint. Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, **it would be error to conflate knowledge of a party's existence with the absence of mistake**.[77]

---

[71] *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 955 (S.D. Tex. 2013) (citing *Norton v. Int'l Harvester Co.*, 627 F.2d 18, 21 (7th Cir. 1980) & *Sanders-Burns v. City of Plano*, 594 F.3d 366, 378 (5th Cir. 2010)).

[72] *See Quinn v. Guerrero*, 863 F.3d 353, 363 (5th Cir. 2017) (noting the existence of a "shared identity of interest between the officers and the City").

[73] *See* Dkt. No. 30 at 5–9, ¶¶ 7–12.

[74] *Id.* at 7, ¶ 10 (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2nd Cir. 1995))).

[75] *Ultraflo Corp.*, 926 F. Supp. 2d at 947 (citing *Jacobsen*, 133 F.3d at 321).

[76] 3 EDWARD SHERMAN & MARY P. SQUIERS, MOORE'S FEDERAL PRACTICE – CIVIL § 15.19[3][d] nn.42–44 and accompanying text (Supp. March 2020), *cited with approval in Sanders-Burns v. City of Plano*, 594 F.3d 366, 377, 379 (5th Cir. 2010).

[77] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (bold emphasis added).

With this holding, the Supreme Court resolved a circuit split and repudiated, among other cases, Second and Seventh Circuit precedent holding that a plaintiff's knowledge or lack of knowledge is dispositive of the Rule 15(c)(1)(C)(ii) "mistake" inquiry.[78] Those Second and Seventh Circuit precedents are the cases the *Jacobsen* Court relied upon to reach its holding that failure to name the correct defendant because of a lack of knowledge is not a permissible mistake.[79]

Accordingly, the *Jacobsen* analysis that Defendants urge is not the appropriate inquiry. Instead, the Supreme Court articulated the considerations that must guide this Court's decision:

> We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity. We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake. The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.[80]

In light of these considerations, the Court must ascertain whether Plaintiff (1) deliberately chose to sue Officer Rodriguez and not other parties, thus foreclosing a relation-back amendment under the "mistake" element, or (2) mistakenly chose to sue Officer Rodriguez based on a misimpression of Officer Rodriguez's role in the events giving rise to Plaintiff's claim. If Officer Solis "legitimately believed that the limitations period had passed without any attempt to sue him," then he would have "a strong interest in repose" that Rule 15(c) would protect by denying a relation-back amendment.[81]

---

[78] SHERMAN & SQUIERS, *supra* note 76, § 15.19[3][d] n.42.
[79] *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) & *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993)).
[80] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010).
[81] *Id.*

Defendants recognize the possibility of a relation-back amendment and admit that, "[h]ad Plaintiff misnamed Officer Solis as Officer Rodriguez, or the other way around, the proposed amendment would squarely fit into the law enunciated by Rule 15(c)."[82] Defendants argue, "[h]owever, [that] where Plaintiff failed to timely bring a claim against the correct defendant or lacked the ability to identify the correct Defendant, and used the good name of Officer Rodriguez to essentially serve as 'John Doe,' Rule 15(c) provides no remedy."[83] Defendants correctly recognize that the use of "Unknown Defendants" or "John Does" in a complaint cannot serve as placeholders for Plaintiff to later substitute in real Defendants identified through discovery after the statute of limitations has passed.[84] Suing a "John Doe" is an intentional choice that forecloses a finding of mistake.[85] However, although Plaintiff originally brought claims against "Unknown Mission Police Officers," Plaintiff dismissed the unknown Defendants in his first motion for leave to file an amended complaint.[86] Here, Plaintiff does not seek to maintain claims against Officer Rodriguez and also substitute in Officer Solis where a "John Doe" once stood, but instead Plaintiff seeks to correct the mistaken belief that Officer Rodriguez shot Plaintiff.[87] Although Plaintiff cannot sue "unknown officers" and "use these 'John Doe' claims to now substitute in [Officer Solis] after the limitations period,"[88] Plaintiff here deliberately but

---

[82] Dkt. No. 30 at 9, ¶ 12.

[83] *Id.*

[84] *See Whitt v. Stephens Cty.*, 529 F.3d 278, 283 (5th Cir. 2008) ("[A]n amendment to substitute a named party for a John Doe does not relate back under rule 15(c)."); *accord Balle v. Nueces Cty.*, 952 F.3d 552, 557 (5th Cir. 2017); *Winzer v. Kaufman Cty.*, 916 F.3d 464, 471 (5th Cir. 2019) ("Thus, to the extent Appellants sued 'unknown officers,' they cannot use these 'John Doe' claims to now substitute in Cuellar and Huddleston after the limitations period.").

[85] *Heglund v. Aitkin Cty.*, 871 F.3d 572, 580 (8th Cir. 2017) ("The [John Doe] device accurately conveyed that the [plaintiffs] did not know [the proposed new defendant's] identity. The statement was not the result of a misunderstanding or misconception; it was an intentional misidentification, not an unintentional error, inadvertent wrong action, or 'mistake.'"); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) ("The Rule allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations.").

[86] *See* Dkt. No. 20.

[87] Dkt. No. 29 at 1, ¶ 2.

[88] *Winzer*, 916 F.3d at 471 (citing *Whitt*, 529 F.3d at 282–83).

mistakenly chose to sue Officer Rodriguez based on the misimpression that Officer Rodriguez was the shooter.[89]

As the Fifth Circuit has recognized, the purpose of Rule 15 is not to "[squelch] a legitimate legal claim . . . by a party mistakenly identifying the party to be sued."[90] The Court is to "take a 'sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors'" and consider Rule 15(c)'s purpose to "help, not hinder, persons who have a legal right to bring their problems before the courts."[91] As the Supreme Court stated, Rule 15 is biased toward resolution of disputes on their merits because "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity."[92] Here, Officer Solis testified that, in the words of Rule 15(c)(1)(C)(ii), he "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity:"

> Q Okay. So about [two] months after the incident is when you learned that it was
> a breach round instead of a bean bag round [that was fired at Plaintiff]?
> A [by Officer Jaime Solis] Yes.
> Q And at that point, you were concerned about a lawsuit?
> A Yes.
> Q And you thought you might be involved in a lawsuit?
> A Correct.[93]

Thus, Officer Solis has no strong interest in repose. Officer Solis knew or should have known that a lawsuit bringing claims against Plaintiff's shooter should have named him but for a mistake of identity because the original complaint and amended complaint made clear that

---

[89] Dkt. No. 29 at 1–2, ¶¶ 2–4.

[90] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 379 (5th Cir. 2010) (quoting SHERMAN & SQUIERS, *supra* note 76, § 15.19[3][d]).

[91] *Id.* at 380 (quoting *Hill v. Shelander*, 924 F.2d 1370, 1373–75 (7th Cir. 1991)).

[92] *Krupski*, 560 U.S. at 550; *see also id.* ("Because a plaintiff's knowledge of the existence of a party does not foreclose the possibility that she has made a mistake of identity about which that party should have been aware, such knowledge does not support that party's interest in repose.").

[93] Dkt. No. 29-2 at 40, 159:18–160:2.

Plaintiff intended to sue the shooter.[94] Where a complaint makes a "mistake concerning the proper party's identity" and incorrectly alleges that a Defendant performed the actions or role alleged, amendment should be permitted to substitute in the correct Defendant.[95] In light of Rule 15's bias to resolving issues on the merits, Officer Solis's awareness of the issues and diminished interest in repose, and Plaintiff's claims against Officer Rodriguez based on Plaintiff's "misunderstanding about his status or role in the events giving rise to the claim at issue,"[96] the Court holds that Plaintiff may amend his complaint to bring allegations and claims for relief against Officer Solis and that such amendment will relate-back to the date of the original pleading under Federal Rule of Civil Procedure 15(c) and therefore will not be barred by the statute of limitations. The Court will consider the proposed amended complaint to the extent it relates to Officer Solis.

### c. Analysis of Proposed Amended Complaint

Plaintiff argues that the amended complaint merely represents an attempt to conform his pleading to the discovery, and that the five warning factors militating against amendment are not present.[97] Defendants respond that Plaintiff's proposed amendment would be futile and fail to state a claim, and that other warning factors are present.[98]

#### 1. Supervisory Liability Claim as to Defendant Rodriguez

Defendants first oppose Plaintiff's attempt to bring a supervisory liability claim under 42 U.S.C. § 1983 against Defendant Rodriguez.[99] Defendants argue that Plaintiff alleges neither the personal involvement of Defendant Rodriguez in the alleged deprivation of Plaintiff's

---

[94] *See* Dkt. No. 1 at 4–5, ¶¶ 12, 20; Dkt. No. 22 at 3–4, ¶¶ 12, 17.
[95] *See Krupski*, 560 U.S. at 554–55.
[96] *Id.* at 550.
[97] Dkt. No. 29 at 4–10, ¶¶ 8–26.
[98] Dkt. No. 30 at 4–5, ¶¶ 5–6 & 9–12, ¶¶ 13–19.
[99] *Id.* at 3, ¶ 5.

constitutional right to be free of excessive force nor a causal connection between Defendant Rodriguez's conduct and the allegedly wrongful actions or any deliberate indifference to the same.[100] Plaintiff argues that Defendant Rodriguez gave a weapon to Officer Solis and gave a direct order to apprehend Plaintiff, which evinces deliberate indifference to Plaintiff's constitutional rights.[101]

"A supervisor cannot be held liable under section 1983 on the basis of *respondeat superior*." [102] "A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[103] To establish a claim under the first possibility, "the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."[104] Furthermore, "[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates."[105] "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[106] "Deliberate indifference describes a state of mind more blameworthy than negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."[107] "The 'deliberate indifferent' requirement permits courts to separate omissions that 'amount to an intentional

---

[100] *Id.* at 5, ¶ 6.
[101] Dkt. No. 29 at 6, ¶ 16.
[102] *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997) (citations omitted).
[103] *2* (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).
[104] *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997).
[105] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations and emphasis in original) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008))
[106] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997).
[107] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

choice' from those that are merely 'unintentionally negligent oversight[s].'"[108] Deliberate indifference can manifest in a failure to train,[109] but Plaintiff is not bringing a failure-to-train claim against Defendant Rodriguez.[110]

Plaintiff alleges in the proposed amended complaint that City of Mission police officers responded to calls about Plaintiff's mental health episode and entered Plaintiff's home, then determined that Plaintiff was in his bedroom.[111] "For several hours, officers attempted to make contact with [Plaintiff] Steven [Wilson], but were met with continued silence."[112] Hours into this scene, Defendant Rodriguez arrived at the home and took control of the scene as the commanding officer.[113] Officer Rodriguez determined that Plaintiff needed to be extracted from his bedroom, so Officer Rodriguez left the home and went to the Mission police department to obtain "less-than-lethal" weaponry to extract Plaintiff.[114] While at the police station, Officer Rodriguez loaded a shotgun with a "breaching round," which is deadly if fired at a person.[115] Officer Rodriguez then returned to Plaintiff's home and "gave the 'less-than-lethal' shotgun loaded with a 'breaching round' to Officer Solis."[116] Officer Rodriguez then ordered other police officers to break an exterior window into Plaintiff's bedroom.[117] Officer Rodriguez used the broken exterior window to see that Plaintiff was lying unarmed in bed and was not responsive to communication, and "Officer Rodriguez then ordered Officer Solis and other officers to breach

---

[108] *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 756 (5th Cir. 1993) (alterations in original) (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)).
[109] *See Porter*, 659 F.3d at 446.
[110] *See* Dkt. No. 29 at 6, ¶¶ 15–16 & Pl.'s Second Am. Compl., Dkt. No. 29-1, ¶¶ 14, 26.
[111] Dkt. No. 29-1 at 2–3, ¶¶ 10–12.
[112] *Id.* at 3, ¶ 12.
[113] *Id.* ¶ 13.
[114] *Id.*
[115] *Id.*
[116] *Id.* ¶ 14.
[117] *Id.*

the door to Steven's bedroom and to extract Steven from the room."[118] In another part of the proposed amendment, Plaintiff alleges that Officer Rodriguez's ordered Officer Solis "to apprehend Steven and gain Steven's compliance by whatever means necessary, including the use of deadly force."[119] After the order, "Officer Solis entered Steven's bedroom" and allegedly shot Plaintiff without provocation with the shotgun that Officer Rodriguez had loaded and given to Officer Solis to use.[120] Plaintiff argues that Officer Rodriguez gave his subordinate, Officer Solis, "a direct order to apprehend Plaintiff using whatever means necessary, including deadly force," and that such are the grounds for supervisory liability under 42 U.S.C. § 1983.[121] Defendants point out that Plaintiff's allegations do not involve a direct order to shoot Plaintiff, and no causal connection exists between Defendant Rodriguez ordering officers to breach the door and extract Plaintiff and the alleged excessive force, and Plaintiff has not alleged that Defendant Rodriguez disregarded a known or obvious consequence of his alleged action.[122]

On the facts alleged here, the Court agrees with Plaintiff. Plaintiff's proposed amended complaint alleges that Officer Rodriguez knew Plaintiff was alone, unarmed, lying in his bed, and not responsive to attempted communication.[123] Plaintiff alleges "[t]here was no emergent situation that threatened life or bodily harm of any person, either police officer or civilian. Steven did nothing to provoke or intimidate" the officers.[124] Despite these circumstances, Officer Rodriguez ordered Officer Solis "to apprehend Steven and gain Steven's compliance by whatever means necessary, including the use of deadly force."[125] Taking all of Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, irrespective of

---

[118] *Id.* at 3–4, ¶¶ 14–15.
[119] *Id.* at 5, ¶ 20.
[120] *Id.* at 3–4, ¶¶ 14–15.
[121] Dkt. No. 29 at 6, ¶ 16.
[122] Dkt. No. 30 at 5, ¶ 6.
[123] Dkt. No. 29-1 at 3, ¶ 14.
[124] *Id.* at 5, ¶ 19.
[125] *Id.* ¶ 20.

whether Plaintiff will ultimately be able to prove his claims, the Court finds that Officer Rodriguez's specific reference to use "deadly force," taken together with the otherwise unprovoked circumstances, evinces Officer Rodriguez's order's deliberate indifference to Plaintiff's constitutional rights. Officer Rodriguez handing Officer Solis a shotgun, then ordering Officer Solis to contemplate the use of deadly force to gain compliance by whatever means necessary is sufficient to affirmatively link Officer Solis's alleged misconduct in using the shotgun with Officer Rodriguez's order. Therefore, the proposed amended complaint would not be futile. The Court **GRANTS** Plaintiff's motion for leave to file an amended complaint to the extent that Plaintiff sets forth allegations and claims under 42 U.S.C. § 1983 against Defendant Teodoro Rodriguez for supervisory liability.

### 2. *Texas Tort Claims Act Claims*

Defendants argue that all of Plaintiff's claims under the Texas Tort Claims Act in the proposed amended complaint are futile.[126] Defendants first argue that Plaintiff brings an intentional tort claim, but the Defendant City of Mission enjoys sovereign immunity that forecloses an intentional tort claim against the city.[127] Furthermore, Defendants argue that Defendant City of Mission is entitled to receive notice of a claim not later than 6 months after the incident giving rise to the claim, and because Plaintiff failed to tender the requisite notice, the claim is jurisdictionally barred.[128]

With respect to notice, section 101.101 of the Texas Tort Claims Act entitles a governmental unit to receive notice not later than 6 months after the incident that may give rise to a Texas Tort Claims Act claim.[129] The notice must describe: "(1) the damage or injury

---

[126] Dkt. No. 30 at 9, ¶ 13.
[127] Dkt. No. 30 at 10, ¶¶ 13–14.
[128] *Id.* at 11, ¶ 15.
[129] TEX. CIV. PRAC. & REM. CODE ANN. § 101.101 (West 2020).

claimed; (2) the time and place of the incident; and (3) the incident."[130] Failure to give the required notice precludes a waiver of sovereign immunity and will jurisdictionally bar claims against a governmental unit, such as a city or municipality.[131] Actual notice is sufficient "when the governmental unit has knowledge of the injury, its alleged or possible fault producing or contributing to the injury, and the identity of the person injured," but "[m]ere notice that an incident has occurred is not enough to establish actual notice."[132]

Plaintiff makes no argument that he has satisfied the notice requirement of the Texas Tort Claims Act.[133] Plaintiff's original complaint was filed on December 18, 2018, complaining of an incident on January 9, 2017,[134] so the complaint cannot satisfy the 6-month notice requirement. Plaintiff's original complaint alleges that "[h]eretofore and on or about January 09, 2017 Defendants acquired actual notice of the injuries and potential claims of the Plaintiff pursuant to the law in these matters,"[135] but the allegation is conclusory and not entitled to the presumption of truth[136] because it states no facts of how Defendants acquired notice. The operative First Amended Complaint alleges "[t]he City had knowledge of Steven's injuries, knew that Officer Rodriguez's conduct caused the injuries, and knew the identity of the Officer and the type of equipment involved. Thus, written notice from Steven was not required."[137] The proposed amended complaint is substantially identical.[138] However, the allegation is also conclusory and will be disregarded for the same reason. The Court has not been presented with sufficient information to determine that the notice requirement of section 101.101 has been fulfilled.

---

[130] *Id.* § 101.101(a).
[131] *Putthoff v. Ancrum*, 934 S.W.2d 164, 174 (Tex. App.—Fort Worth 1996, writ denied).
[132] *Id.* at 173.
[133] *See* Dkt. No. 29.
[134] Dkt. No. 1 at 3, ¶ 7.
[135] *Id.* at 7, ¶ 33.
[136] *See supra* notes 38–39 and accompanying text.
[137] Dkt. No. 22 at 5, ¶ 24.
[138] Dkt. No. 29-1 at 7, ¶ 28.

Furthermore, the Court finds that the mere fact of the shooting itself is insufficient to satisfy the notice requirement. If such were the case, the notice requirement would be nullified in all such cases.

Accordingly, the Court agrees with Defendants that Plaintiff's claim against Defendant City of Mission is barred by official immunity.[139] The Court **DENIES** Plaintiff's motion for leave to amend to the extent any proposed amendment would attempt to assert claims against the City of Mission. The Court has no occasion to reach the arguments with respect to waiver of sovereign immunity under the Texas Tort Claims Act in connection with negligent or intentional acts and makes no determination.

### 3.   Undue Delay

Defendants' brief contains a subsection under the Texas Tort Claims Act entitled "Undue Delay," wherein Defendants argue that Plaintiff's entire motion for leave to file an amended complaint should be denied for reasons of delay.[140] Undue delay is one of the warning factors that militates against permitting Plaintiff to file an amended complaint.[141] Defendants contend that "Plaintiff's second amended complaint would constitute an undue delay, and Defendants should not burdened in the context of a set of amendments that could and should have been asserted initially."[142] Plaintiff asserts that his proposed amendment has not been unduly delayed because "Plaintiff did not become aware that Officer Solis was the shooter until he was able to conduct discovery in this case, including Officer Solis's deposition."[143] Plaintiff chose to wait until discovery had been substantially completed to move for leave to amend his complaint,[144]

---

[139] *See Putthoff v. Ancrum*, 934 S.W.2d 164, 174 (Tex. App.—Fort Worth 1996, writ denied).
[140] Dkt. No. 30 at 11–12, ¶¶ 16–19.
[141] *See supra* note 28 and accompanying text.
[142] Dkt. No. 30 at 12, ¶ 18.
[143] Dkt. No. 29 at 9, ¶ 23.
[144] *Id.*

and "[s]ince written discovery has been substantially completed, Plaintiff does not anticipate amending the claims further."[145] Defendants respond that Plaintiff "certainly knew of all relevant facts and theories supporting his proposed amendments since the inception of the cause of action, as the events giving rise to his claim occurred on January 9, 2017, and his Original Complaint was filed on December 18, 2018."[146]

"Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time."[147] In considering whether the proposed amendment arrives after "undue delay," the Court "may properly consider (1) an unexplained delay following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed."[148]

Here, Plaintiff represents that discovery did not begin in this case until June 2019.[149] Plaintiff deposed Officer Solis in September 2019[150] and waited until discovery was substantially complete to move to amend in December 2019.[151] This case contrasts starkly with the precedent Defendants urge the Court to apply. In that case, the plaintiff "sought leave to add both a fact of which it had been aware since before it filed its original complaint and a cause of action based on the identical, known facts that underlie its original complaint" which the plaintiff knew about some 24 months before filing its original complaint.[152] The Fifth Circuit affirmed the lower court's "discretionary determination that allowing [plaintiff] to amend its complaint would not

---

[145] *Id.* at 4, ¶ 9.
[146] Dkt. No. 30 at 12, ¶ 18.
[147] *In re Southmark Corp.*, 88 F.3d 311, 315–16 (5th Cir. 1996) (quoting *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981)).
[148] *Id.* at 316 (quotations and footnotes omitted).
[149] Dkt. No. 29 at 1, ¶ 3.
[150] *See* Dkt. No. 29-2.
[151] Dkt. No. 29 at 4, ¶ 9.
[152] *In re of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996).

further the purposes of Rule 15, but to the contrary would serve only to reward [plaintiff] for its unreasonable delay."[153]

In this case, Plaintiff learned no later than September 30, 2019, that Officer Jaime Solis was actually the shooter,[154] and Plaintiff moved to amend in December 2019 based on new information.[155] Plaintiff also represents that, even as late as April 2019, "he and . . . counsel mistakenly believed Officer Rodriguez shot Plaintiff. . . . Plaintiff did not have the means necessary to learn that Officer Rodriguez was not the shooter."[156]

The Court is unpersuaded that Plaintiff acted with undue delay. Plaintiff moved within 6 months since the beginning of discovery to amend his complaint to account for new facts that Plaintiff did *not* know at the inception of this case. Unlike the precedent in the *Southmark* case that Defendants urge, Plaintiff was not aware of all relevant facts at the time of filing the original complaint. Furthermore, the Court is disinclined to punish Plaintiff for waiting until the substantial close of discovery, when Plaintiff anticipates no further amendment,[157] to move for leave to amend because the Court does not favor repeated amendments.

Even if the Court were to find undue delay, Defendants do not contend that any of the other warning factors militating against leave to amend are present.[158] As earlier discussed, Rule 15 is biased toward resolving claims on their merits.[159] Accordingly, even if the Court found undue delay, the Court would not necessarily deny leave to amend given its examination of the other warning factors. Because Defendants do not urge rejection of Plaintiff's motion for leave to

---

[153] *Id.*
[154] *See* Dkt. No. 29-2.
[155] Dkt. No. 29.
[156] *Id.* at 1, ¶ 2.
[157] *Id.* at 4, ¶ 9.
[158] *See* Dkt. No. 30.
[159] *See supra* notes 90–92 and accompanying text.

amend based on the other four warning factors, except as already discussed, the Court has no occasion to consider them and makes no determination.

### 4.   Dismissal on Other Grounds

As noted above, Defendants assert that "Plaintiff's claims under the Texas Tort Claims Act are also futile."[160] Defendants pray "that this Court deny Plaintiff's Opposed Motion for Leave to File Second Amended Complaint in its entirety."[161]   However, Defendants make no argument as to the futility of any other claims beyond those already discussed, or any argument as to why Plaintiff's other claims should be dismissed or denied from a proposed amendment. Federal courts are "not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate."[162] This Court is entitled to have issues clearly defined; arguments asserted without citation to authority or left undeveloped are waived.[163] "Judges are not like pigs, hunting for truffles buried in briefs."[164] Accordingly, Plaintiff's motion for leave to amend will be **GRANTED** to the extent that Defendants fail to develop argument in opposition, which will be taken as a representation of no opposition.[165]

---

[160] Dkt. No. 30 at 9, ¶ 13.
[161] Dkt. No. 30 at 12.
[162] *See U.S. Bank v. Lindsey*, 920 N.E.2d 515, 535 (Ill. App. Ct. 1st Dist. 2009) (quoting *Obert v. Saville*, 624 N.E.2d 928, 931 (Ill. App. Ct. 2d Dist. 1993))
[163] *In re FM Forrest, Inc.*, 587 B.R. 891, 933 (Bankr. S.D. Tex. 2018) (quoting *Perez v. Astrue*, No. 2:09-1504, 2009 WL 4796738, at *4 (D.N.J. Dec. 9, 2009)).
[164] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).
[165] LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition.").

### III. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** Plaintiff's motion for leave to amend except to the extent any proposed amendment would attempt to assert claims against the City of Mission. The Court instructs Plaintiff to file a Second Amended Complaint on this Court's docket consistent with this opinion and order no later than **May 8, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 29th day of April 2020.

_____
Micaela Alvarez
United States District Judge